\*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SANDY HOOK WATERMANS ALLIANCE, INC., | : : : | |
| Plaintiff, | : : | Civ. Action No.: 11-813(FLW) |
| v. | : : | OPINION |
| NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, | : : : : | |
| Defendant. | : : | |

**<u>WOLFSON, District Judge</u>**:

Plaintiff Sandy Hook Watermans Alliance, Inc. ("Sandy Hook" or "Plaintiff") brings this citizen suit pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging that Defendant New Jersey Sports and Exposition Authority ("NJSEA" or "Defendant"), through its Concentrated Animal Feeding Operation ("CAFO"), has been and continues to discharge waste into, <u>inter alia</u>, the Shrewsbury and Navesink Rivers located in Monmouth County, New Jersey. In the instant matter, Defendant moves to dismiss the Complaint on a variety of legal bases, including the lack of subject matter jurisdiction under the CWA. For the reasons that follow, the Court finds that it lacks jurisdiction, and therefore, Defendant's motion is granted. Plaintiff's Complaint is dismissed without prejudice.

## BACKGROUND

For the purposes of this motion, the Court only recounts relevant facts from the Complaint and takes them as true.[1] Plaintiff is a non-profit association of shell fishermen who harvest fish and operate in, inter alia, the Navesink and Shrewsbury Rivers. Compl., ¶ 6. The NJSEA is a state entity which owns and operates a horse racing track known as Monmouth Park Racetrack.[2] The NJSEA operates a CAFO on a portion of its horse racing facility. Compl., ¶ 8. The New Jersey Department of Environmental Protection ("NJDEP") issued a permit to the NJSEA, which prohibited the NJSEA from discharging any waste after June 1, 2006, with the exception of discharges resulting from a catastrophic storm event. This permit was renewed on June 12, 2008. See Compl., ¶ 10.

In 2007, the NSJEA was charged by the NJDEP with violating the permit, see Compl., ¶¶ 2-3, 7-8, by discharging prohibited wastewater from the CAFO-area of Monmouth Park Racetrack into Branchport Creek.[3] See ACO dated May 10, 2010, ¶ 13. The NJSEA contested the violation and requested an administrative hearing. See Administrative Order dated October

---

[1]   In addition, the Court will "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993). Additionally, the Court may properly consider documents specifically referenced in the complaint, as well as documents that are part of the public record. Heightened Indep. & Progress v. Port Auth. of N.Y. & N.J., No. 07-2982, 2008 U.S. Dist. LEXIS 104948, at *6 (D.N.J. 2008).

[2]   According to Plaintiff, during the pendency of this case, the Monmouth Park Racetrack has been sold or leased to a private entity. However, there is nothing on this record of the transfer, and indeed, the NJSEA is the only defendant in this case; Plaintiff has not moved to add any other defendants at this time.

[3]   Monmouth Park Racetrack is adjacent to Shrewsbury River estuaries of Branchport Creek and Turtle Mill Creek which feed into the Shrewsbury and Navesink Rivers. See Compl., ¶ 7.

10, 2007.  In 2008, the NJDEP commenced litigation against the NJSEA in New Jersey Superior Court.  See State Compl. dated May 15, 2008.

On August 27, 2008, Plaintiff filed its Complaint in this district in the matter Sandy Hook Watermans Alliance, Inc. v. New Jersey Sports and Exposition Authority, Civ. Action No. 08-4321 (MLC).  However, Plaintiff requested that action be dismissed due to improper notice.  See Dismissal Order dated June 23, 2009.

On May 10, 2010, the NJDEP executed an Administrative Consent Order ("ACO"), wherein the NJSEA agreed to pay a penalty of $131,250 and, among other projects, construct a storm water collection and retention system to remediate the environmental pollution.  See ACO dated May 10, 2010.  As a result, a Judicial Consent Order was signed by the state Superior Court Judge and the state court action was dismissed.  See Order dated May 11, 2010.  Prior to the entry of the ACO, public notices were sent out to all interested parties, and public meetings were held regarding the projects included in the ACO.  See Notice of Public Hearing dated May 11, 2009.  According to the NJSEA, no entity, including Plaintiff, intervened or otherwise raised any objections in that matter, and consequently, the ACO became effective and enforceable on May 10, 2010.

According to Plaintiff, pursuant to the CWA, it first sent a statutory notice of suit to all parties, including Defendant, on March 1, 2010, and a supplemental notice was sent on January 7, 2011.  Thereafter, Sandy Hook filed the Complaint on February 10, 2011. Essentially, Sandy Hook alleges that the NJSEA continues to pollute despite the issuance of the ACO and that the NJDEP has failed to adequately monitor and enforce the ACO.  Indeed, Plaintiff expressly states that it "cannot emphasize enough that the [Complaint] is to bring defendant into compliance in *the future*."  Compl., ¶ 10 (emphasis in original).   For this, Sandy Hook asks this Court to enjoin

all activities of the NJSEA "until if and when [the NJSEA] demonstrates that the waste control plan proposed by defendant is completed and defendant demonstrates that the system will bring the defendant into compliance with its permit." Compl., p. 10.  In addition, Sandy Hook requests civil penalties, punitive damages and attorneys' fees for the NJSEA's continued violations of the CWA.  Id.

## DISCUSSION

### A.  Clean Water Act

As a brief background of the CWA, this statute gives primary enforcement authority to the EPA and state enforcement agencies, such as the NJDEP.  EPA v. California ex rel. State Water Resources Control Board, 426 U.S. 200, 204 (1976).  However, Congress granted limited authority to private citizens to bring suit in federal court under certain enumerated circumstances to enforce the CWA.  Section 1365 states in relevant parts:

> (a) Authorization; jurisdiction Except as provided in subsection (b) of this section and section 309(g)(6) [33 USCS § 1319(g)(6)], any citizen may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this Act [33 USCS §§ 1251 et seq.] or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act [33 USCS §§ 1251 et seq.] which is not discretionary with the Administrator
>
> \* \* \*
>
> (b) Notice. No action may be commenced--
>
> (1) under subsection (a)(1) of this section--
>
> (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged

4

>    violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
>
>    (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(a), (b).

Pursuant to the CWA, any citizen has the right to file a civil action against any person or government agency or instrumentality that is allegedly in violation of an order issued by any state entity. 33 U.S.C. § 1365(a)(1). When, however, the state has commenced its own action against the violator, the citizen may proceed only by intervening and joining the action. 33 U.S.C. § 1365 (b)(1)(B). Importantly, these "citizen suits" are meant to supplement state action and not to replace or supplant it. Gwaltney of Smithfield Ltd. V. Chesapeake BE Found. Inc., 484 U.S. 49, 60 (1987). Indeed, the legislative history of the CWA reinforces the view that the role of the citizens in brining suits under the CWA is a limited one, and that these suits are proper only "if the Federal, State, and local agencies fail to exercise their enforcement responsibilities. Id. (citing S. Rep. No. 92-414, 64 (1971)).

### B. Standard of Review

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2004).

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court "retired" the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Rather, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. The Third Circuit summarized the pleading requirement post-Twombly:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'

Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that the Twombly standard applies to all motions to dismiss, the Supreme Court recently further clarified the 12(b)(6) standard. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950. Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. In short, "a complaint must do

6

more than alleged the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. (quoting Iqbal, 129 S.Ct. at 1953).

The NJSEA moves to dismiss the Complaint on various legal grounds. Among them, the NJSEA contends that the Court lacks subject matter jurisdiction pursuant to the CWA. Indeed, when faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether we are dealing with a facial or factual attack to jurisdiction. If this is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). "If this is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." Id. A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." Id. Here, since the NJSEA's challenge is that Sandy Hook's pleadings are insufficient under several provisions of the CWA, this Court will consider this as a facial attack to jurisdiction.

7

C.     Subject Matter Jurisdiction

The NJSEA argues that this case is barred by the entry of the ACO and the Judicial Consent Order and Final Judgment, which are final orders as set forth by § 1319(g)(6)(A)(iii). Section 1319 governs the enforcement of water pollution prevention and penalties. Subsection (g) specifically governs the enforcement of administrative penalties. It contains a provision permitting interested persons to be heard and present evidence at a public hearing after public notice has been given. 33 U.S.C. § 1319 (g)(4). This notice can typically be made by announcing the public hearing in a regular local publication, such as a newspaper. The state administration may take this evidence into consideration when determining the exact repercussions to exact on polluters. Id. Once a final administrative penalty and order has been issued, and the violator has paid that penalty, that violator "shall not be the subject of a civil penalty action" for the violation, including any citizen suits brought under § 1365. § 1319(g)(6)(A)(iii).  Notably, however, the state proceeding must provide for the possibilities of penalty assessments, injunctive relief and public participation which are at least the substantial equivalent to those available to the EPA in the federal courts.  See Baugh v. Bradford, 592 F.2d 215 (3d Cir. 1979); Student Public Interest Research Group of New Jersey, Inc. v. Fritzsche, Doge & Olcott, Inc., 759 F.2d 1131 (3d Cir. 1985).

Here, the NJSEA argues that § 1319(g)(6)(A)(iii) acts as a bar because the ACO, which is final and enforceable, has been entered to address the pollution involving the subject matter of this case.  Plaintiff, however, challenges the enforcement efforts of the NJDEP and alleges that the pollution activities of the NJSEA have been ongoing since the entry of the ACO.  In other words, Plaintiff is not challenging the past violations that the ACO has addressed, but rather, Plaintiff alleges, albeit insufficiently, that the NJSEA and the NJDEP have colluded together to

8

disregard the ACO and that the NJSEA has been polluting continuously and at a greater rate. However, this distinction leads to the Court's next analysis: in order to allege facts sufficient to establish jurisdiction under the CWA, Plaintiff must allege good faith allegations of continuous or intermittent violations. Gwaltney, 484 U.S. at 68; see also Natural Resources Defense Council, Inc. v. NGK Metals Corp., No. 89-7546, 1991 U.S. Dist. LEXIS 3310, at *7-8 (E.D. Pa. Mar. 19, 1991); Public Interest Research Group of New Jersey, Inc., v. Elf Atochem North America, 817 F.Supp. 1164, 1176 (D.N.J. 1993). Having reviewed the Complaint, the Court finds that Plaintiff falls short of alleging sufficient facts to demonstrate that the NJSEA has been engaging in ongoing pollution activities.

According to the Complaint, the NJDEP's enforcement actions have been "totally ineffective" and the "enforcement has not been diligent or aggressive." Compl., ¶ 10. As a result, "the pollution has become worse over the years with no abatement whatsoever." Id. As support, Plaintiff cites to water quality tests taken by the Monmouth County Health Department in 2009 and 2010, which Plaintiff argues show that there has been pollution in the subject waters. See Compl., Ex. B at pp. 5, 8-9. A review of these tests reveals that the latest test results were taken on September 27, 2010 – just five months after the ACO became final in May 2010. Other then the date of the tests, Plaintiff does not identify which sample results are alleged violations, or which specific regulation, standard, limitation or order the NJSEA has violated. For example, the Complaint asserts that "each [water test] shows a violation," but does not allege how each test constitutes a violation. Similarly lacking in substance, the Complaint states that "[t]hese counts exceed regulations by tens of thousands of colonies per mL and represent a significant increase in pollution" without identifying which "regulations" or whether the levels and "increase in pollution" are caused solely, or even in part, by any specific violation of the permit

held by the NJSEA or the ACO. Essentially, Plaintiff's allegations of ongoing pollution are based upon guesswork. In that regard, besides its bald and conclusory assertions and inconclusive test results, Plaintiff has not alleged a good faith basis to substantiate its claim that the pollution has become worse since the ACO has been in place. Additionally, for the same reasons, Plaintiff fails to allege that the NJDEP has not diligently enforced the ACO. Absent any specific alleged violations, Plaintiff's assertions that the NJDEP's enforcement efforts are ineffective are merely conclusory and unsubstantiated.

Furthermore, these test results were taken well before the future completion date -- June 30, 2012 -- of the storm water collection and retention system to remediate the environmental pollution as required by the ACO. By express language of the ACO, the NJSEA is not permitted to discharge to "the waters of the State from the CAFO-area of the Monmouth Park Racetrack" after August 31, 2012. See ACO dated May 10, 2010, ¶ 55. Acknowledging that compliance with the permit is not expected for "several years," Plaintiff's allegations of future violations are premised upon its perception that the "pending enforcement methods will prove [] ineffective" and that "there is no assurance that [the remediation] will work." Compl., ¶ 10. Likewise, these allegations of future violations are bald assertions which do not meet the Twombly standard of pleading and thus, the allegations do not properly set forth a good faith basis that the NJSEA will likely commit future violations. Accordingly, Plaintiff has not alleged sufficient facts to establish the proper jurisdiction of this Court under the CWA.

### D.   Notice Requirements - § 1365 (b)(1)(A)

Plaintiff did not intervene in the prior state court action or otherwise object to the entry of the ACO. In that respect, Plaintiff is barred from challenging any aspect of the ACO and the violations contained therein. In this case, because Plaintiff's lawsuit involves future and ongoing

violations subsequent to the entry of the ACO, Plaintiff must have provided proper notice of these particular violations to the NJSEA before filing this action pursuant to 33 U.S.C. § 1365 (b)(1)(A). However, the Court finds that it also lacks subject matter jurisdiction because Plaintiff has not complied with this notice provision of the CWA. Section 1365 (b) provides that sufficient notice must be given to the state agency and the potential defendant indicating the nature of the alleged discharge. 33 U.S.C. § 1365 (b)(1)(A). Notice serves a two-fold purpose. First, it allows government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. Public Interest Research Group of N.J. v. Hercules, Inc., 50 F.3d 1239, 1246 (3d Cir. 1995). Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." Gwaltney, 484 U.S. at 60. The content requirements for the notice letter are intended to facilitate these objectives within the 60-day period afforded by the letter.

> The EPA has specified the content requirements for a prospective plaintiff's notice letter:
>
> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). In other words, the notice needs to "provide enough information to enable the [potential defendant] to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, the outfall at which it occurred, and the person or persons involved." Hercules, 50 F.3d at 1248. In addition, citizen suits cannot be brought before sixty days after notice has been given by a plaintiff. 33 U.S.C. § 1365(b)(1)(A).

Here, Plaintiff maintains that it sent all interested parties a letter notice on March 1, 2010, and a supplemental letter notice on January 7, 2011. Because the Complaint was filed on February 10, 2011, Plaintiff submits that it was timely. The Court disagrees. Plaintiff's March 2010 Letter pre-dated the May 2010 ACO and the Judicial Consent Order and Final Judgment resulting from the state court action. In that regard, the March 2010 Letter did not contain any violations that the Complaint in this case alleges and encompasses. Indeed, the water quality tests attached to the March 2010 Letter were taken in between the years of 2007 – 2009. Clearly, these tests do not, and cannot, establish future violations for which Plaintiff complains here, and as a result, the Letter failed to put the NJSEA on notice of the alleged violations in this Complaint. Accordingly, the March 2010 Letter does not constitute proper notice pursuant to § 1365(b)(1)(A).

Having determined that the March 2010 Letter does constitute notice for the purposes of the CWA, the January 2011 Letter is not a supplemental notice, but rather, is considered the only notice prior to this lawsuit. This conclusion leads to the Court to find that Plaintiff's January 2011 Letter was sent less than the mandatory 60-day period prior to the filing of the February 2011 Complaint. Based on this deficiency alone, the Court lacks subject matter jurisdiction. See Public Interest Research Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1189 n.15 (3d Cir. 1995) ( § 1365(b)(1)(A) notice provision is a jurisdictional prerequisite); see also Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989) (notice provision for citizen suit under Resource Conservation and Recovery Act); National Envtl. Found. v. ABC Rail Corp., 926 F.2d 1096 (11th Cir.1991) (Powell, J., sitting by designation) (applying Hallstrom to the notice provision of the Clean Water Act).

In addition to the untimely filing of the Complaint, Plaintiff's January 2010 Letter does not constitute sufficient notice under the CWA for substantially similar reasons the Court has already delineated above. See supra, Part A. To summarize, the notice cites various tests taken by the Monmouth County Health Department from October 2009 – September 2010, from various locations. In its Letter, Plaintiff does not identify which of the sample results are alleged violations, or which standard, regulation or order those results violate. Further, Plaintiff fails to set forth the locations from which the discharge allegedly occurred and thus, fails to properly allege that there are locations for which the NJSEA is responsible. More importantly, some of the test results pre-date the ACO and other results were taken only five months after the ACO became final. In that connection, Plaintiff has failed to connect the test results to any violations it avers in this Complaint for which the NJSEA is responsible. Accordingly, the January 2011 Letter fails to put the NJSEA on notice of the alleged violations.[4]

## CONCLUSION

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction and as such, Defendant's motion to dismiss is granted. Plaintiff's Complaint is dismissed without prejudice.

DATED:   July 20, 2011                    /s/      Freda L. Wolfson
                                                   Freda L. Wolfson, U.S.D.J.

---

[4] Defendant also argues that the Complaint should be dismissed on other grounds, including the contention that this Court should abstain from exercising jurisdiction pursuant to the primary jurisdiction and the Burford abstention doctrines. Because the Court has found that it lacks subject matter jurisdiction, the Court need not address these additional grounds for dismissal.